CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

DEC 0 9 2008

JOHN F CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| GUSTAF NELSON, III, | ) | Case No. 5:08cv00016 |
| | ) | |
| Plaintiff | ) | REPORT AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) By: | Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant | ) | |
| | ) | |

The plaintiff, Gustaf Nelson, III, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying his claim for a period of disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on June 23, 2008, along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered the following day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Alleging two basic assignments of administrative error, the plaintiff seeks reversal of the decision denying his application or alternatively he seeks the remand of this case under sentence four

of 42 U.S.C. § 405(g). It is his contention that the ALJ "erred in his review of the psychological conditions suffered by [him]" and that the Appeals Counsel erred by failing to give any consideration to the "new medical evidence" from his treating physician. In his brief, the Commissioner contends the ALJ's assessment of the plaintiff's mental impairments was based on substantial evidence, and he argues the Appeals Council was not obligated to give a reason for finding the post-hearing evidence to be an inadequate justification for further administrative action. Each party has moved for summary judgment; no written request was made for oral argument,[1] and the case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the summary judgment motions of both parties be denied, the Commissioner's final decision be vacated, and the case be remanded for further proceedings under Sentence Four of 42 U.S.C. § 405(g).

I. **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of disability insurance benefits. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

The record shows that plaintiff filed his application on August 4, 2003, alleging that his disability began on June 1, 2003 due to functional limitations related to gall bladder pain, depression, and a back injury. (R.21,94,119.) His claim was denied, both initially and on reconsideration, and pursuant to his timely request an administrative hearing on his application was held on March 3, 2005 before an ALJ. (R.21,41-42,53,484-505.) The plaintiff was present, testified, and was represented by counsel. (R.21,58-59,484, 487-504.) Following this hearing, the plaintiff was sent for a consultive psychological assessment, and a supplemental hearing was held on August 3, 2005. (R.506-523.) The plaintiff and a vocational witness were present, and both testified. (R.506-523.) Due to the confusing nature of the vocational testimony, it was stricken on motion of the plaintiff's

3

counsel (R.526.), and new vocational testimony was obtained at a supplemental teleconference hearing on October 13, 2005. (R.21,524-535.) Once again, the plaintiff was present and represented by counsel. (R.21,524.)

Following the agency's standard five-step decisional inquiry, [2] the plaintiff's claim was denied by written administrative decision dated November 2, 2005. (R.21-33.) Therein, the ALJ concluded that the plaintiff's "impairments which affected his back, bilateral ulnar neuropathy, anxiety related disorder, and major depressive disorder were "severe" impairments [3] within the meaning of the Act (R.23-31.) After determining that none of these conditions, either singularly or in combination, met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ concluded that the plaintiff possessed the residual functional capacity to perform a range light [4] unskilled work that took into account certain "moderate" [5] and "slight" [6] mental limitations of function . (R.24-33.)

---

[2] *See Mastro v. Apfel*, 270 F.3$^d$ 171, 177 (4th Cir. 2001); 20 C.F.R. § 404.1520.

[3] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

[4] Light work activity involves lifting no more than twenty (20) pounds with frequent lifting or carrying objects weighing up to ten (10) pounds, and a job in this exertional category generally also requires a good deal of walking or standing or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) and § 416.967(b).

[5] The "moderately limited" mental functions identified by the ALJ included the abilities: (1) to understand and remember detailed instructions; (2) to carry-out detailed instructions; (3) to make judgments on simple work-related decisions; (4) to respond appropriately to work pressures in a usual work setting; and (5) to respond appropriately to changes in a routine work setting. (R.24.)

[6] The "slight limitations" in mental functions identified by the ALJ included the abilities: (1) to understand and remember short, simple instructions; and (2) to carry-out short simple instructions. (R.24.)

4

After issuance of the ALJ's adverse decision, the plaintiff made a timely request for Appeals Council review. (R.482-483.) As part of his appeal request, a functional assessment and letter from Dr. Thomas Cardwell, the plaintiff's treating psychiatrist, were submitted for Appeals Council consideration. (R.14-17.) Without comment or reference [7] to this post-hearing submission, the plaintiff's request was denied (R.6-12.), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Facts and Analysis

The record in this case shows that the plaintiff was born in 1953 and was nearly fifty-two years of age [8] at the time of the third administrative hearing. (R.98,488,528.) He has a college education, and his past relevant work included jobs as a resort activities director, a sales representative, a sales clerk, and a public school teacher. (R.108,144,510-512,528.) All of these jobs were determined by the ALJ "to be beyond the [plaintiff's] current mental capacities." (R.31.)

Pertinent to the two issues presented by the plaintiff's appeal, his mental health records [9]

---

[7] The administrative record shows that plaintiff's counsel submitted this post-hearing medical evidence under his cover letter of December 13.2005. (R.13.) Although this submission is included in the record, there is no suggestion in the record that it was considered, treated as a medical exhibit, or even given an exhibit number by the Appeals Council.

[8] Under the agency's regulations, the plaintiff is classified as a *person closely approaching advanced age* (age 50-54), and for such individuals age is considered by the agency along with any severe impairments and limited work experience which may seriously affect a person's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

[9] In his brief to this court, the plaintiff acknowledged that the ALJ's consideration of his physical limitations "was . . . appropriate;" therefore, the facts and findings related to the plaintiff's physical condition and related limitations are not addressed in this report.

5

cover a period between June 2003 and November 2005. When he first sought mental health treatment through Family Life Resource Center in the Summer of 2003, he was diagnosed to have an adjustment disorder with mixed anxiety and depressed mood adjustment (DRM-IV diagnosis code "309.28") and to exhibit mild mental health symptoms (GAF score of "65"),[10] including a depressed mood and anxiety. (R.187-188,199.) At the time he was first seen at Valley Behavioral Medicine in December 2003 for a psychiatric assessment, Dr. Thomas Cardwell's clinical diagnosis was a first episode of major depression moderate symptoms, and he assigned a functioning score of 55[11] based on the behavioral characteristics the plaintiff was exhibiting at the time. (R.303-305.) Wellbutrin was prescribed, and the plaintiff was scheduled for a follow-up appointment. (R.305.)

Dr. Cardwell's subsequent office notes indicate that the plaintiff's condition did not improve in any meaningful way, and he generally did "poorly" from a mental health standpoint during the ensuing one and one-half years. (R.301-302, 410-415, 466-469.) Consistent with his office notes and records and with an earlier agency-arranged consultive psychological assessment, on November 18, 2005, Dr. Caldwell completed an assessment of the plaintiff's residual functional capacity. Therein, he identified multiple activities where the plaintiff retained no useful work-related ability to function and a number of activities where the plaintiff's abilities were significantly compromised due to major

---

[10] The Global Assessment of functioning ("GAF") is a numeric scale which ranges from zero to 100 and is used by mental health clinicians and doctors to represent a judgment of an adult individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders Fourth Edition*, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score in the range of 61 to 70 indicates that the individual has some mild symptoms or some difficulty in social or occupational functioning, but is generally functioning pretty well and has some meaningful interpersonal relationships. *Id.*

[11] A GAF score in the range of 51 to 60 indicates that the individual has moderate symptoms or moderate difficulty in social or occupational functioning (*e.g.*, few friends, conflicts with peers or co-workers).

6

Case 5:08-cv-00016-SGW-JGW  Document 14  Filed 12/09/08  Page 6 of 13  Pageid#: 61

depression. (R.14-16.).

This post-hearing assessment and Dr. Caldwell's accompanying letter outlining the plaintiff's mental status were submitted in a timely manner to the Appeals Counsel; however, the record contains no indication that they were given even cursory consideration in connection with the request for Appeals Council review. [12]

Four months after he first saw Dr. Cardwell, the plaintiff's medical record was reviewed by a state agency psychologist. (R.349-366). He concurred with Dr. Caldwell's diagnosis of moderately severe major depression. (R.353,356.) Based on the then-available mental health information he concluded that the plaintiff's daily activities appeared to be "mildly" restricted and his abilities to maintain social functioning, concentration, persistence, and pace to be "moderately" impaired. (R.363; *see also* R.349.)

Following a consultive psychological evaluation less than one month later on April 18, 2005, Dr. Nadia Webb reported that the plaintiff's depression "appeared to be a profound contributor to his physical symptoms," including weakness, fatigue, tension and distress. (R.456.) Based on her test results, Dr. Webb assessed the plaintiff's depression to be "within a severe . . . range, potentially with psychotic features," and she assigned a current GAF score of 51. [13] (R.456-457.)

---

[12] See footnote 7.

[13] See footnote 11.

7

In her report, Dr. Webb also noted *inter alia* that the plaintiff demonstrated a "quite flat" affect, appeared to be "quite depressed," had "short term memory lapses," and needed "to write things down." (R.457,460.) These professional observations and opinions, however, were discounted by the ALJ on the ground that Dr. Webb did not report that the plaintiff either needed to make notes or easily gave-up during the testing phase of her evaluation. (R.31.) These justifications, however, are incorrect. Dr. Webb in fact reported that the plaintiff's mini-mental status examination errors were due to defective short-term memory recall, and she specifically reported that her conclusions were "[b]ased on Mr. Nelson's [Minnesota Multiphasic Personality Inventory-II] responses." (*Id.*)

Thus, the ALJ failed to cite either a cognizable reason or any persuasive contrary evidence upon which to base his decision "to give no weight to these comments" and opinions of Dr. Webb. Her conclusions concerning the plaintiff's short-term memory lapses and undermined motivation, therefore, were not considered as part of the ALJ's assessment of the plaintiff's residual functional capacity. (R.31.) As the vocational witness stated in his October 13, 2005 testimony, depending on their degree these functional limitations could effectively make the plaintiff disabled. (R.432-435.) Consequently, the "degree" to which these additional impairments erode the jobs which the plaintiff would otherwise be able to perform, is not clear from the record, and for this reason alone the remand of this case to develop the record fully is both compelled and justified. *See DeLoatche v. Heckler*, 715 F.2$^d$ 148, 150 (4th Cir., 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of the decision.").

8

For the same reason, the apparent failure of the Appeals Council to consider the November 18, 2005 medical source statement of Dr. Caldwell compels a remand of this case. *Alexander v. Apfel*, 14 F.Supp.2$^d$ 839, 843 (WDVa, 1998); (*Stawls v. Califano*, 596 F.2$^d$ 1209, 1213) (4th Cir., 1979) ("As [this court has] stated on more than one occasion, the [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight.").

Dr. Cardwell's multi-page functional assessment facially demonstrated significant functional limitations not considered by the ALJ. It was prepared by the plaintiff's treating psychiatrist. It was submitted to the Appeals Council in a timely manner. It was patently relevant, and it was decisionally neither considered nor weighed.

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Stawls v. Califano*, 596 F.2$^d$ at 1213 (quoting *Arnold v. Secretary of H.E.W.*, 567 F.2$^d$ 258, 259) (4th Cir., 1977).

The Commissioner argues in his brief that the Appeals Council was not required to engage in a detailed analysis of this new evidence, and as support for this contention he cites the court to two unpublished Fourth Circuit *per curium* decisions, *Holler v. Comm., SSA*, 1999 WL753999, and *Freeman v. Halter*, 15 Fed. Appx. 87, 2001 WL847978. Even if it is assumed solely for the purposes of discussion that these pre-2007 unpublished opinions have even a modicum of

9

precedential value, [14] the Commissioner's reliance in them is inapposite. At most, they stand for the proposition that the Appeals Council is not obligated to engage in a detailed analysis or announce detailed reasons for finding this evidence to be insufficient to change the ALJ's decision. *Holler v. Comm., SSA*, 1999 WL 753999, *2; *Freeman v. Halter*, 15 Fed. Appx. at 89. In the case now before the court, the Appeals Council engaged in no analysis; it announced no reasons, and it did not even assign this supplemental treating source evidence an exhibit number. On this basis also, this case merits remand pursuant to *sentence four* of 42 U.S.C. § 405(g).

In the alternative, a *sentence six* remand of is case is justified. A district court may appropriately remand a Social Security appeal on the basis of newly discovered evidence pursuant to "sentence six" of 42 U.S.C. § 405(g), when the plaintiff satisfies four prerequisites. *Borders v. Heckler*, 777 F.2$^d$ 954, 955 (4th Cir., 1985). First, the evidence must be "new" and not merely cumulative. Second, it must be "material" to the extent that the Commissioner's decision might reasonably have been different had this evidence been considered. Third, there must be good cause for the plaintiff's failure to submit the evidence earlier. And fourth, the plaintiff must make "at least a general showing" of the nature of the new evidence.

Given the Appeals Council's failure to consider this treating source functional assessment, it is new and not cumulative. It could, and likely would, have resulted in a different decision, particularly given its potential impact on the vocational testimony. It was submitted to the Appeals Council in a timely manner, and its nature is self-evident.

---

[14] *See* Rule 32.1, Federal Rules of Appellate Procedure.

10

Although the court's function is limited to making a determination whether substantial evidence exists to support the Commissioner's final decision, a remand is manifestly required where the ALJ and the Appeals Council have each failed to consider properly the plaintiff's mental condition and associated functional limitations documented in the administrative record. *See Vega v. Commissioner of Social Security,* 265 F.3$^d$ 1214, 1219 (11th Cir. 2001).

### V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The ALJ erred in his review of the plaintiff's psychiatric condition and associated functional limitations;

3. The Appeals Council erred in failing to give any consideration to the supplemental treating source functional assessment by Dr. Caldwell;

4. The ALJ's discount of Dr. Webb's findings and conclusions was not based on substantial evidence;

5. The testimony of the vocational witness was based on an incomplete and flawed hypothetical inquiry;

6. Substantial medical and activities evidence does not exist in the record to support the findings concerning the plaintiff's psychiatric symptoms and associated functional limitations;

7. Substantial evidence does not exist to support the Commissioner's finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

8.  Substantial evidence does not exist to support the Commissioner's finding that through the decision date the plaintiff retained the residual function capacity to perform a range of unskilled light work activity;

9.  The final decision of the Commissioner should be reversed and the case remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration and, if necessary, further development of the record;

10. The remand should direct that, in the event the Commissioner is unable to determine on the extant record that plaintiff is disabled within the meaning of the Act, he is to recommit the case for further evidentiary proceedings at which both sides may introduce additional evidence; and

11. Should the remand of this case result in the award of benefits, plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time **would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that the summary judgment motions of both parties be DENIED, that the Commissioner's decision denying benefits be VACATED, that the case be REMANDED pursuant to Sentence Four for further consideration in accordance with this Report and Recommendation.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

12

Case 5:08-cv-00016-SGW-JGW   Document 14   Filed 12/09/08   Page 12 of 13   Pageid#: 67

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 8th day of December 2008.

/s/ *James G. Welsh*
United States Magistrate Judge